McCuen, Appellant, et al. *v.* Philadelphia
Rapid Transit Co. et al.

Argued December 3, 1941. Before SCHAFFER, C. J.;
MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*C. Brewster Rhoads,* of *Montgomery & McCracken,*
with him *Philip C. Pendleton* and *B. Nathaniel Richter,*
for appellant.

*Marshall A. Coyne,* with him *Bernard J. O'Connell,* for appellee.

Opinion by Mr. Justice Stern, January 20, 1942:

Gray's Ferry Avenue in Philadelphia, which runs from northeast to southwest, is approximately 32 feet wide from curb to curb. Below Catharine Street the track of defendant Transit Company on Gray's Ferry Avenue is somewhat to the east of the center of the street, but, beginning at the northeasterly side of Catharine Street, it curves over toward the westerly side of Gray's Ferry Avenue until within eight feet eight inches of the curb, when it straightens out and continues at that distance. An automobile operated by Alfred P. Brown, in which plaintiff, Charles A. McCuen, was a passenger, was being driven southwest on Gray's Ferry Avenue from 24th Street to Catharine Street, straddling the westerly rail. A trolley car of defendant company was proceeding northeast; it crossed Catharine Street, followed the course of the track from the easterly to the westerly side of the street, and had just about reached the "straightaway" when it and the automobile collided head-on. Plaintiff suffered injuries and brought suit for damages against the Transit Company and Brown; he recovered a verdict against both, but the court in banc, while sustaining the verdict against Brown, entered judgment in favor of the Transit Company n. o. v., from which judgment plaintiff appeals.

The motorman testified that he saw the automobile quite a distance away, kept watching it as it approached straddling the rail, saw that it did not change its speed or its course, and accordingly threw on his brakes and brought his car to a stop when thirty feet away from the oncoming vehicle; nevertheless the left side of the automobile struck the left front corner of the car, and the automobile became jammed between the latter and the westerly curb at an angle, its front wheels being against the curb and its rear wheels against the corner of the

car. The motorman was corroborated in the essentials of his story by passengers in his car, and, if the accident happened as thus described, it is clear that it was not due to any negligence on his part.

Plaintiff's case depended upon the testimony of defendant Brown, called by plaintiff as under cross-examination. Brown testified that he saw the oncoming trolley car when it was about a block distant, that, as he proceeded, straddling the westerly rail of the track between 24th Street and Catharine Street, a woman stepped off the westerly curb, whereupon he blew his horn and moved to the left; the woman immediately stepped back on the curb and Brown then pulled back again to the right and went ahead parallel with the curb, straddling the rail as before, the trolley car at that time being distant from him about 135 feet. He judged the speed of the oncoming car to be 35 miles an hour, and, while this estimate is not entitled to much weight in view of the fact that the car was coming toward him, he testified definitely that the car did not slow down from the time it was 135 feet away until the moment of the impact, but, on the contrary, "seemed to increase its speed." He said that he could not turn off to his left because of parked cars and traffic on the easterly side of the street, nor to his right because of the narrow space between the track and the westerly curb at that point. Plaintiff produced witnesses who had come to the scene of the accident immediately after its occurrence, who testified that the automobile was not standing at an angle to the curb but that its entire right side was against the curb and its left front against the left front of the trolley car, thus indicating that, because of the overhang of the latter, the space was too narrow for a safe passage of the automobile between the car and the curb. The jury would be justified, if they believed this testimony, in finding, as they did, that the motorman, as well as Brown, was negligent, because, while a motorman may assume that the movements of a vehicle coming toward him on the track are under con-

trol and that it will turn off in time to avoid a collision, it is his duty, when he sees that it is persisting in its approach to a point where there is danger of a collision, to slow down or stop his car and thus try to avert the impending accident; this is especially true where, as here, there are circumstances which make it difficult for the operator of the vehicle to leave the track: *Trumbower v. Lehigh Valley Transit Co.,* 235 Pa. 397, 84 A. 403; *Hastings v. Northampton Transit Co.,* 100 Pa. Superior Ct. 348. If, therefore, the motorman, as Brown testified, instead of stopping his car, continued on, and even increased his speed, it would be for the jury to pass upon the question of his negligence.

The action of the court in granting judgment for defendant company n. o. v. arose out of the fact that toward the end of the trial Brown was recalled to the stand and confronted with a signed statement given by him to the police about an hour after the happening of the accident. As far as here relevant this statement was as follows: "I was operating my Dodge sedan, Pennsylvania license CF923, southwest on Gray's Ferry Avenue on the right hand side about one foot from the curb and not over twenty miles per hour. Just above 24th Street a pedestrian started to step off the curb. I swerved to my left into a trolley which was coming northeast, injuring myself and a passenger in my car. Q. Did you see the trolley coming? A. I did not until it was on top of me." The witness testified that what was contained in the statement was true, except that he did not remember saying "swerved". Upon further examination he testified, in explanation of his statement that he did not see the trolley car until it was on top of him, that what he meant was that he could not see the *motorman* "because he had the curtain down," but he did see the trolley car before the accident. Upon this state of the record the court held that Brown's earlier oral testimony was nullified by his admission that the facts contained in the written statement were true, this ruling being based upon the

principle laid down in *Black v. Philadelphia Rapid Transit Company*, 239 Pa. 463, 466, 86 A. 1066, 1067, and applied in *Cox v. Wilkes-Barre Railway Corporation*, 340 Pa. 554, 560, 17 A. 2d 367, 371, that, where a witness' attention is called to contradictions in his testimony, and he is asked which of two irreconcilable declarations made by him is correct, his final statement of the fact is the one that prevails. This rule is of no help to defendant company in the present case. The witness, in his final testimony, retracted the statement that he did not see the trolley car until immediately before the happening of the accident, and there was thus left, as the only discrepancy between his testimony on the stand and his written statement, that in the former he said that after turning left to avoid striking the pedestrian he again turned to the right, while in the latter, that he swerved to his left into the car; in either event, however, it is conceded that at all times as he approached the trolley car he was straddling the rail, and the variance is therefore relatively unimportant; moreover, as already pointed out, he repudiated the expression that he had "swerved". Since it is not impossible to harmonize his earlier oral testimony with his written statement as modified by his final testimony on the stand, the case was necessarily for the jury: *Parker v. Matheson Motor Car Co.*, 241 Pa. 461, 88 A. 653; *Haverkamp v. Sussman*, 317 Pa. 187, 176 A. 206.

Judgment reversed and the record remitted with direction to enter judgment for plaintiff on the verdict.

DISSENTING OPINION BY MR. JUSTICE DREW:

I would affirm the action of the learned court below in entering judgment n. o. v. for defendant company on the ground that no negligence was shown, on the following excerpts from the court's opinion. "The testimony indicates that just before the collision the trolley car was stopped at a time when the automobile was thirty feet away but the auto continued in its course and crashed into the trolley car.

"The plaintiff Charles A. McCuen called the defendant Alfred P. Brown on cross examination. Part of Brown's testimony seeks to place the blame for the occurrence upon the motorman. However, on cross examination by the defendant the Philadelphia Rapid Transit Company, Brown admitted that a statement which he had made in writing and signed told the correct story of this accident. An examination of his testimony which appears on page 132 of the transcript and continues on page 133, leaves no doubt that he is emphatic in declaring that the statement with which he was confronted is true. The statement flatly contradicts the testimony which he gave at the trial, and is in part as follows:

'I was operating my Dodge sedan, Pennsylvania License CF923, southwest on Grays Ferry Avenue on the right-hand side about one foot from the curb at not over twenty miles per hour. Just above 24th Street, a pedestrian started to step off the curb. I swerved to my left into a trolley which was coming northeast, injuring myself and a passenger in my car.

Q. Did you see the trolley coming?

A. I did not until it was on top of me.'

"Under these circumstances we could not permit the jury to attempt to reconcile the conflict which exists between this statement and his other testimony. The situation is controlled by the opinion in *Cox vs. Wilkes-Barre Railway Corporation*, 340 Pa. 554, which in turn followed *Black vs. Philadelphia Rapid Transit Company*, 239 Pa. 463."

It is conceded that without the testimony of Brown, there is no evidence of negligence of defendant company to submit to a jury.