Kadlecik *v.* Renault & Sons, Inc., Appellant, et al.

Argued September 27, 1944.  Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Philip H. Strubing,* with him *Evans, Bayard & Frick,* for appellant.

*William F. Quinlan,* with him *John J. McDevitt, Jr.,* for appellee.

OPINION BY JAMES, J.:

Plaintiff brought this action to recover for personal injuries caused by the negligent operation of an automobile owned and driven by William F. Wagner, the additional defendant, an employee of the appellant corporation. The jury found for the plaintiff against the appellant and for that defendant, over, against the additional defendant. From the dismissal of the employer's motion for judgment n. o. v. this appeal was taken. The contention is that the evidence was insufficient to warrant a finding that at the time of the accident Wagner was engaged on his employer's business. The questions of Wagner's negligence and plaintiff's contributory negligence are not in issue.

According to Wagner, who was the only witness on the question of master and servant, he was hired by the appellant wine company to promote its wine and champagne in the central city territory in Philadelphia. In addition, his duties included promotion calls on about twenty-five owners of licensed places outside this district and visits to adjust differences between the company and customers. At the time in question he was receiving $40 wages and $20 for expenses, weekly. His use of the expense money was discretionary with him and it included the cost of running his car and of standing treats. Prior to the hiring, the state manager of appellant company inquired whether Wagner had a car, and later the automobile number, the serial and motor num-

ber, and the make of the vehicle were requested. In the truck of this car, Wagner carried at all times two or three cases—each weighing about 25 pounds—of small 4, 6 or 8 ounce sample bottles, some big display cards, and three or four plastic bottles 2 or 3 feet high. In compliance with the state law, the sample bottles were opened on the spot for the owner and bartender to taste and judge the contents; the display cards and plastic bottles were left for advertising purposes. Old customers, already familiar with the products and displaying the advertising, would need neither the advertising matter or a taste of the samples; nevertheless, though they could, less conveniently, be reached by trolley or taxi, the salesman invariably used his own car. While all calls, whether made within or without the territory, were reported to the company, the salesman was free to visit any customer at any time, using any route he chose, and "was ready to do business at any time of the day or night." The most effective promotion could be done at night when patronage of the taprooms was at the peak.

Wagner, on the night of the accident, called on a former customer, a Mr. Crane, who owned a taproom in Germantown. He had been directed to adjust a complaint about some bad champagne delivered to Crane. By 1 A. M. the grievance was amicably settled, and Wagner left in the general direction of his home, taking along some "dud" bottles to return to the office next morning. On the way, Wagner negligently struck and injured plaintiff.

On these facts the trial judge submitted the question of Wagner's agency to the jury, charging them to decide, first, whether the car was reasonably necessary to the work which Wagner was doing, and secondly, whether at the time of the accident, Wagner was engaged in the business of his employer. In the light of the verdict for plaintiff, under the decision in *Sinclair v. Perma-Maid Co. Inc.*, 345 Pa. 280, 26 A. 2d 924, appellant ad-

mits responsibility for the operation of Wagner's car when in the master's service but argues that at the time and place of the accident Wagner was not engaged in furthering the business of his employer within the scope of his employment.

The crux of this appeal insofar as it involves questions submitted to the jury, rests on Wagner's testimony: "I was headed in the direction of home, but there were one or two places on the way towards home that I probably would have stopped in if they had been open, or looked like they were doing any business." Appellant's objection is that the statement was so filled with probabilities and undetermined possibilities, that the jury could not find an existing intention to visit any tavern after leaving Crane's. The appellant seems to give an unduly dubious quality to these words. It was an inference for the jury, bearing in mind that Wagner was a defendant, that if the taverns were doing business, then he would most likely have visited one or two places in the interests of his employer. Since the jury found that the intention was to call on them if they were open, he was engaged on his master's business at the time of the collision. Any salesman who visits customers at their homes or business places may find that they are away but he is nonetheless engaged on the affairs of his employer whenever he is traveling to the location where they can be usually found; otherwise the liability of the master would hinge, not on the intent and the purpose of the trip, but on its successful accomplishment. The only significant probablity concerned the intention to visit these taverns if they were open and that was a question for the jury. The jury was not asked, as in *Henderson v. Nat. Drug Co.*, 343 Pa. 601, 23 A. 2d 743, to draw a succession of inference from primary facts, but to determine a state of mind accompanying a physical act.

Emphasis is placed on the cross-examination of Wagner on his prior written statement that "This was

my last stop, and I was on my way home, having concluded all business for the rest of the night." When pressed for a categorical answer he admitted that he had made the statement. This admission ended his testimony but it is not conclusive of the fact (on the principle of *Black v. Phila. R. T. Co.*, 239 Pa. 463, 86 A. 1066 and *Cox v. Wilkes-Barre Railway Corp.*, 340 Pa. 554, 17 A. 2d 367) for his testimony as a whole indicates that it was a, qualified admission of the truth of the statement. It was for the jury to harmonize his prior statement that he had ended his duties for the day with his testimony that he had not. *McCuen v. P. R. T. Co.*, 344 Pa. 112, 23 A. 2d 860.

But even if Wagner had "concluded all business" for the day and was on his way home, his employer was still liable for his negligence. This is not a case involving the injury of an employee off the premises on his way home at the end of regular working hours. Wagner was on a special mission, authorized by the president of the company, and there is no evidence of an unequivocal act which took him out of the course and scope of his employment prior to plaintiff's injury. In the absence of such evidence it is unimportant whether he actually intended to make other business calls on his way home. In *Haddock v. Edgewater Steel Co.*, 263 Pa. 120, 106 A. 196, a leading case, the employee was directed to conduct an investigation in a distant city and make a report to his employer in Pittsburgh. On completing the investigation it was necessary for him to return to Pittsburgh and he arrived there after his employer's office was closed for the day. He was injured on the way to his home where he intended to spend the night prior to making his report. It was held that he was on his employer's errand and in the course of his employment when injured. In *Messer v. Manufacturers L. & H. Co.*, 263 Pa. 5, 106 A. 85, the employee was subject to call though on vacation and was injured while on a special mission directed by his employer. It was

held: "His compliance with this request continued from the time he left his home until he finally returned ......" In *Cymbor v. Binder Coal Co et al.*, 285 Pa. 440, 132 A. 363 the workman was directed to go into the mine at night to start the pumps for which he received extra pay. He was injured on the way home. In sustaining judgment on an award it was said: "...... the nightly trip to the mine was in furtherance of the master's business, to do an errand for the master and he was properly on the latter's time not merely at the moment of starting the pumps, but going and coming as well." In *Kelling v. Froemming Bros.*, 287 Pa. 471, 135 A. 129, it was held that the duties of an employee on a special errand continued until his return home, in absence of evidence that on his return he was traveling on a mission of his own, not connected with his employment. To the same effect are *Cronin v. American Oil Co.*, 298 Pa. 336, 148 A. 476; *Lillian Haley v. City of Phila.*, 107 Pa. Superior Ct. 405, 163 A. 917; *Krapf v. Arthur*, 95 Pa. Superior Ct. 468. These cases involve a construction of the Workmens' Compensation Law. But testimony which establishes that an employee, off the premises, is actually engaged in the furtherance of the employer's business or affairs is the same kind and degree of proof required to make the master liable for the servant's negligence in an action of trespass. The principle of those cases therefore is applicable and is controlling here.

Judgment affirmed.

PER CURIAM, January 25, 1945:

The foregoing opinion was prepared by Judge JAMES prior to the expiration of his term of office. It is now adopted as the opinion of the Court.