**STAPP DRILLING COMPANY, Appellant,**

**v.**

**Falba Jo ROBERTS et al., Appellees.**

**No. 622.**

Court of Civil Appeals of Texas, Corpus Christi.

July 29, 1971.

Rehearing Denied Sept. 16, 1971.

Dyer, Redford, Burnett, Wray, Woolsey & Dunham, B. Mills Latham, Corpus Christi, for appellant.

Edwards & DeAnda, William R. Edwards, Philip K. Maxwell, Corpus Christi, Wade & Traylor, Jon Newton, Beeville, for appellees.

## OPINION

SHARPE, Justice.

This appeal is from an order of the district court of Bee County, Texas, overruling the plea of privilege of defendant-appellant to be sued in Bexar County, Texas. Plaintiffs-appellees rely upon Subdivision 9a, Article 1995, Vernon's Ann.Civ. St., to sustain venue in Bee County. Findings of fact or conclusions of law were not requested nor filed.

This suit was instituted by Mrs. Falba Jo Roberts, individually and as next friend of her minor children, and as personal representative of the Estate of Roy Roberts, plaintiffs, against Stapp Drilling Company and the Estate of Jesse Ray Hester, Deceased, defendants, for recovery of damages on account of the death of Roy Roberts resulting from an automobile collision occurring on July 22, 1968 in Bee County, Texas, between a vehicle then being operated by Roy Roberts and another operated by Jesse Ray Hester who was alleged to be an employee of Stapp Drilling Company and acting within the scope of his employment for it.

The parties stipulated for the purpose of the hearing on the plea of privilege, as follows: (1) that Roy Roberts, plaintiffs' decedent is dead; (2) that plaintiffs have suffered damages under law as a result of his death; (3) that Roy Roberts died as a result of an automobile collision that occurred on July 22, 1968, on U.S. Highway 59 at approximately 11:15 A.M.; (4) that on the occasion in question, Jesse Hester was guilty of negligence, proximately causing the collision and death of Roy Roberts, and that such negligence occurred in Bee County, Texas; (5) that on the date in question and for some days prior thereto, Jesse Hester was and had been an employee of defendant Stapp Drilling Company; and (6) that Jesse Hester was employed as a roughneck for the defendant, and had been working at a job-site near Goliad, Texas.

Thus, the only issue left to be resolved was whether or not at the time in question Jesse Hester was acting within the scope of his employment thereby rendering defendant Stapp Drilling liable under the doctrine of respondeat superior.

Appellant's single point of error asserts that the trial court erred in overruling its plea of privilege because plaintiffs failed to establish that Jesse Hester was acting within the course of his employment at the time of the collision made the basis of this suit and thus failed to prove a cause of action for venue purposes against appellant as required by Section 9a, Art. 1995, V.A.C.S.

In support of their position that Jesse Hester was acting within the scope of his employment at the time of his collision, plaintiffs offered the deposition testimony of Anna Hester, the widow of Jesse Hester, deceased. Mrs. Hester testified in substance as follows: She lives in Beeville, Texas, and is the widow of Mr. Jesse Hester, who was killed on July 22, 1968 in an automobile accident in Bee County, involving Mr. Roy Roberts. For three days prior to the accident, July 19, 20 and 21, 1968, her husband had been working as a derrick hand for Stapp Drilling Company near Goliad, Texas. Mr. Jeff Washburn was the toolpusher on that rig. Mr. Hester had not worked continuously prior to that period of time, having been off work for approximately three months. Mr. Hester came home from work at about 7:30 P.M. on Sunday, the day before the accident. He told his wife that he was going to be with Tubby, his brother, for a while and

would be back later. For the sole purpose of showing Mr. Hester's state of mind as to whether he expected to go to work on the following day, the trial court admitted the deposition of Mrs. Hester to the effect that Mr. Hester said that he didn't think they would be working the next few days, that it had rained over there and it was pretty wet to get in there and they might call him in the morning if they needed him. The following morning at about 6:30 A.M., Mr. Washburn, the toolpusher for Stapp Drilling Company, called the Hester residence on the telephone and talked to Mrs. Hester. Washburn said that he needed Jesse to come out there. Mrs. Hester told Washburn that Jesse was not home at that time. Washburn said "as soon as Jesse—Jesse gets in to have him come out there in his own car." Mrs. Hester also testified that Washburn said he needed Jesse to help move the rig. Jesse Hester arrived home about 10:30 A.M., and Mrs. Hester told him what Jeff Washburn had said. Mr. Hester washed up and changed clothes and left in his own car. Mrs. Hester further testified that her husband was paid every two weeks when working for Stapp Drilling Company. She thought he was on an hourly wage and was paid for the time he actually spent on the rig. Mrs. Hester said her husband usually would leave for work at about six and the working day at the rig started about seven in the morning. She did not know whether her husband was actually doing anything for Stapp Drilling Company at the time the accident happened.

In the case of International & G. N. R. Co. v. Anderson, 82 Tex. 516, 17 S.W. 1039 (1891) our Supreme Court announced some of the basic rules applicable here as follows: "Where a recovery is sought of the master for an injury inflicted by his servant, the plaintiff must show that the servant did the wrong while acting within the scope of his employment. * * * But the act must be done within the scope of the general authority of the servant. It must be done in furtherance of the master's business, and for the accomplishment of the object for which the servant is employed."

In 52 A.L.R.2d 287 an annotation appears on the subject "Employers liability for negligence of employee in driving his own car." At page 303 of the annotation, one of the applicable general rules is set out as follows:

"The courts have recognized that the mere fact that one in the general employment of another, driving the employee's own vehicle, in traveling to his job is insufficient, in the absence of special circumstances, to justify the conclusion that the employee is acting in the scope of his employment so as to charge the employer with responsibility for the negligent operation of the vehicle."

The Texas cases cited in support of that statement are Antilley v. Jennings, 183 S.W.2d 982 (Tex.Civ.App. Eastland, 1944, wr. ref.); Reddick v. Prairie Oil & Gas Co., 51 S.W.2d 735 (Tex.Civ.App., Amarillo, 1932, wr. ref.); Lofland v. Jackson, 237 S.W.2d 785 (Tex.Civ.App., Amarillo, 1950, wr. ref. n. r. e.); Fountain v. Walker, 260 S.W.2d 717 (Tex.Civ.App., Eastland, 1953, wr. ref. n. r. e.); Norvell Service Company v. Spell, 288 S.W.2d 133 (Tex.Civ.App., Beaumont, 1955, wr. ref. n. r. e.); Bishop v. Farm & Home Savings & Loan Ass'n, 75 S.W.2d 285 (Tex.Civ.App., Eastland, 1934, n. w. h.).

Also on page 303 of the A.L.R. annotation it is stated:

"If the employee's use of his own car in the business can be found to have been authorized, there still remains the question whether, at the time of the accident in suit, the car was being so used. This issue is ordinarily determined under the same tests and in the light of the same factors as where the employee is using the employer's car, with the important

distinction, however, that where the employee is using his own car the presumption or permissible inference of use in the scope of employment which arises from a showing that one in the general employment of the car owner is driving it, appears to be inapplicable."

In the leading case of American Nat. Ins. Co. v. Denke, 128 Tex. 229, 95 S.W.2d 370, 107 A.L.R. 409 (1936) it appeared that one W. W. Saunders was an agent (as distinguished from an employee) of American National Insurance Co. Saunders ran his car into Denke and Shephard while he was driving across the city of Galveston for the express purpose of soliciting insurance. The court held in part as follows:

"Without undertaking to comment upon the various terms of the written contract between the insurance company and Saunders, we think we may safely and confidently say that it is undoubtedly one of agency. Eliminating all matters of definition and distinction, it is obvious we think that Saunders was in common and everyday parlance an 'insurance agent,' and, as such, plaintiff in error was his principal. That he was not a 'servant,' within the usual significance of that term, seems to be obvious. See American Savings Life Insurance Company v. Riplinger, 249 Ky. 8, 60 S.W. 2d 115. Therefore, in considering the liability of plaintiff in error for the tortious acts of Saunders, we must apply the principle governing in such matters where the relationship of principal and agent is involved, and as particularly applicable in cases of this special class.

In section 250 of the Restatement of Law of Agency by the American Law Institute, it is said:

'Except as stated in Section 251, a principal is not liable for physical harm caused by the negligent physical conduct of an agent, who is not a servant, during the performance of the principal's business, unless the act was done in the manner directed or authorized by the principal.

'Comment:

'(a) A principal employing another to achieve a result but not controlling nor having the right to control the details of his *physical movements* is not responsible for incidental negligence while such person is conducting the authorized transaction. Thus, the principal is not liable for the negligent physical conduct of an attorney, a broker, a factor, or a rental agent, as such. In their movements and their control of physical forces, they are in the relation of independent contractors to the principal. It is only when to the relationship of principal and agent there is added that right to control *physical details as to the manner of performance* which is characteristic of the relationship of master and servant, that the person in whose service the act is done becomes subject to liability for the physical conduct of the actor.'

This statement of the law is adopted by the court as applicable to these cases. The exceptions enumerated in section 251 have no application here.

We are brought, therefore, to the precise inquiry as to whether or not in this instance Saunders, in his capacity as agent, also occupied the further capacity of servant of the insurance company in the matter of operation of the automobile. It is settled that 'the test of one's liability for the act or omission of his alleged servant is his right and power to direct and control his imputed agent in the performance of the *causal* act or omission at the very instant of the act or neglect.' Putting the matter in a different way, it may be said that a master is liable for acts of his agent under the doctrine of respondeat superior only where the relationship of master and

servant exists at the time and in respect to the very thing causing the injury and from which it arises. Trachtenberg v. Castillo (Tex.Civ.App.) 257 S.W. 657; Leachman v. Belknap Hardware & Mfg. Co., 260 Ky. 123, 84 S.W.2d 46; Standard Oil Company v. Parkinson (8 Cir.) 152 F. 681, and authorities cited in those cases. The Supreme Court of Tennessee has in several cases reiterated the language of Judge Lurton as follows: 'In every case, the decisive question is, had the defendant the right to control *in the given particular*, the conduct of the person doing the wrong.' See Income Life Insurance Co. v. Mitchell, 168 Tenn. 471, 79 S.W.2d 572, 574.

While in principle these cases are controlled by the decision in the case of National Cash Register Co. v. Rider, 24 S.W.2d 28, in which the opinion of the Commission of Appeals was adopted by the Supreme Court, yet counsel for defendants in error forcefully argue that these cases are distinguishable from that one, because the control which plaintiff in error had the right to exercise over Saunders extended to more details of the work than was exercised over Rider in the case mentioned. They in effect seek to show that the exercise of control over Saunders was such as to constitute him a servant. We are unable to agree with this contention. In our opinion, while there are numerous provisions in the contract which indicated control over Saunders, yet we think the control evidenced by such provisions related primarily to the contractual features of his employment, and to the attainment of ultimate results, and not to 'physical details as to the manner of performance' of his movements while soliciting, collecting, attending meetings, etc. Falling short in this last particular, the control was not such as to create liability on the part of plaintiff in error for his negligent acts in the operation of his wife's automobile; although at the time he may have been engaged in the furtherance of the company's business."

In the instant case it is apparent that the plaintiffs-appellees could not fasten liability on Stapp Drilling Company by showing only that Mr. Hester was going to his place of work in his own car. Standing alone, that evidence would not be legally sufficient to raise an issue that Hester was acting in the scope of his employment.

Appellees apparently recognize the above-stated rule, and in support of their position that Mr. Hester was acting within the scope of his employment for Stapp Drilling Company contend as follows: that the instant case is materially indistinguishable from those cases where the employer sent the employee on a "special mission" and was held liable to third persons for the negligence of the employee; that there was a special benefit to appellant because its tool-pusher ordered Hester to use his own car so that he could get to the place of work the quickest way possible and thereby save time; and that Hester was the servant of appellant at the time of the accident and that appellant was exercising effective control over him.

It is generally recognized that there is an exception to the "going to and coming from" work rule as it relates to master-servant relationships which is known as the "special benefit" or "special errand" exception. The rule and exception are stated in 8 Am.Jur.2d, Automobiles and Highway Traffic, Sec. 630, page 184 as follows:

"It is generally held that getting to the place of work is ordinarily a personal problem of the employee and not a part of his services to his employer, so that in the absence of some special benefit to the employer other than the mere making of the services available at a place where they are needed, the employee is not acting within the scope of his employment in traveling to work,

even though he uses his employer's motor vehicle, and therefore the employer cannot be held liable under the doctrine of respondeat superior to one injured by the employee's negligent operation of the vehicle on such a trip."

The evidence here reflects that when Mr. Hester returned to his home on Sunday evening—on the day preceding the date of the accident—he did so for personal reasons. There existed a doubt about whether it was possible to work at the job-site for a while and Hester expected his employer to call him on Monday if they needed him. When Mr. Washburn, appellant's toolpusher, called about 6:30 A.M. on Monday he was advised by Mrs. Hester that her husband was not at home. Washburn, according to Mrs. Hester, then advised her to tell Mr. Hester, when he returned home, to come to the place of work in his own car, which she did. There is nothing in the record to show that Mr. Hester usually travelled to and from work other than in his own car. There is also no evidence showing in connection with his travel to work that Mr. Hester was ordered by his employer to do anything in connection with the performance of the work at the job-site or elsewhere. In short, Mr. Hester was returning to the place of work in order to perform his duties for his employer there. Under these conditions we do not perceive that there was a special mission ordered or special benefit received by the employer. Mr. Hester was engaged in furtherance of the master's business, if at all, only in the sense that he was travelling to the place of work to make his personal services available. We believe that appellees' reliance here on the case of Friend-Rowe Motor Co. v. Ricci, 293 S.W. 851 (Tex.Civ.App., Beaumont, 1927, wr. dism.) is misplaced. There the court held that there was evidence which authorized the jury to conclude that the employee who was on his way to work was also using the car to promote his master's business by seeking to make a sale of a car.

Because of Mrs. Hester's deposition testimony, we must assume that Mr. Washburn expressly authorized Mr. Hester to use his car in travelling to work on the day of the accident. However, that fact does not establish that appellant had the right to require Mr. Hester to use his own automobile, and there is no evidence that appellant had that right as a part of its contract of employment with Hester. Additionally there is no evidence to show that appellant had the right to direct Hester how to use his automobile or what route to follow in travelling to the place of work. It thus appears that there is no evidence to show that appellant, the master, had the right and power to control Mr. Hester, the alleged servant, "in the performance of the causal act or omission at the very instant of the act or neglect;" or that "the relationship of master and servant exists at the time and in respect of the very thing causing the injury and from which it arises." American Nat. Ins. Co. v. Denke, supra. In addition to the cases heretofore cited in connection with the annotation in 52 A.L.R.2d 287, see also Parmlee v. Texas & New Orleans Railroad Company, 381 S.W.2d 90 (Tex.Civ.App., Tyler, 1964, wr. ref. n. r. e.); Glasgow v. Floors, Inc. of Texas, 356 S.W.2d 699 (Tex.Civ.App., Dallas, 1962, n. w. h.); Church v. Ingersoll (CA 10, 1956), 234 F.2d 176.

For the foregoing reasons it appears that there is no evidence to raise the issue or to support a finding that Mr. Jesse Hester was in the scope of his employment with appellant at the time of the accident in question, which results in a failure to establish the requisite master-servant relationship and a cause of action against appellant for venue purposes. The trial court should have sustained appellant's Plea of Privilege.

The judgment of the trial court is reversed and judgment here rendered that appellant's Plea of Privilege be sustained and this cause transferred to a district court of Bexar County, Texas.

NYE, Chief Justice (dissenting).

I respectfully dissent.

The appellant Falba Jo Roberts, individually and as next friend of her minor children, and as personal representative of the Estate of her deceased husband, Roy Roberts, brought suit to recover for his death under the Texas Wrongful Death Act. She sued the Estate of Jesse Ray Hester, deceased, and Stapp Drilling Company. She contended that Jesse Ray Hester was an employee of Stapp Drilling Company and while operating a motor vehicle within the scope of his employment he was guilty of acts of negligence that proximately caused the collision and ultimate death of Roy Roberts, her deceased husband and the father of her children. Stapp Drilling Company filed a plea of privilege to be sued in the county of its residence in Bexar County, Texas.

The trial was to the court without a jury. The court overruled the plea of privilege, finding that the evidence and stipulations were sufficient to retain venue in Bee County, Texas. Stapp Drilling Company has appealed.

Among the stipulations pertinent to this appeal are the facts that plaintiff's husband died as a result of an automobile accident that occurred on July 22, 1968 on U. S. Highway 59 approximately 2.6 miles east of Beeville in Bee County at approximately 11:15 in the morning. It was stipulated that on the occasion in question that Jesse Hester (one of the defendants) was guilty of negligence proximately causing the collision and death of plaintiff's husband, Roy Roberts. Other stipulations included the fact that Jesse Hester (deceased) was and had been an employee of defendant Stapp Drilling Company and had been working at a job-site near Goliad, Texas.

The issue before the Court was whether or not at the time in question Jesse Hester was acting within the scope of his employment, thereby rendering defendant Stapp Drilling Company liable under the doctrine of respondeat superior.

The general rule is that in absence of special and peculiar facts and circumstances affecting the relationship of the parties and the purposes to be served, the servant in going to and from his work in an automobile acts only for his own purposes and consequently his employer is not liable for an injury occasioned while the automobile was so being used. As is the occasion which accompanies most general rules of law, there are special exceptions. One of the exceptions to this rule is known as the "Special Benefit" or "Special Errand" exception. See 8 Am.Jur.2d, Automobile and Highway Traffic, Sections 630, 634 and 635, pages 184–194 and 52 A.L.R.2d 287, et seq., and Restatement of Law of Agency. I would hold that the evidence here is sufficient to uphold the trial court's judgment bringing this case within this exception.

The precise factual question before us has not attracted the attention of any Texas court. That is: where an employee has left work on one day, and being advised that he will not be working the next day, but is later called to work at an irregular time and is directed by his employer to use his own automobile to transport himself to a remote work-site to do a specific type of job, and in doing so negligently causes the death of the other, would such facts in this situation, bring the employee within the scope of his employment so as to make his employer liable for his negligent acts?

Whether this situation took place is a question of fact for a jury or a trier of fact to decide. In the instant case the trial court decided favorably for the plaintiff. The majority opinion has held that there was no evidence to support this finding. No one contends that the law would not

cover this fact situation. It is only contended that the facts proved are insufficient as a matter of law to maintain a cause of action against appellant.

On appeal from an order overruling a plea of privilege every reasonable intendment must be resolved in favor of the trial court's judgment. James v. Drye, 159 Tex. 321, 320 S.W.2d 319 (1959). There were no findings of facts requested or filed by the trial court, therefore, it must be implied that the trial court found from the evidence all the necessary elements that would support its judgment.

Reviewing the evidence in its entirety both as to the direct and circumstantial evidence, and including that evidence which the trial court took judicial knowledge thereof, I would hold that Jesse Hester was acting within the course and scope of his employment at the time of the accident. The arguments given in the majority opinion to reverse and render, point only to negative inferences that can be gained from the lack of specific evidence, rather than recognizing the reasonable inferences and intendments that are required to be given by an appellate court to the evidence that will support the trial court's judgment.

The workman in effect was told he was not to go to work on this particular day. His subsequent actions reflect that he relied upon this fact. He did not return home until late the next morning after the normal time to go to work. It had been raining the day before and he was told or it was reasonably inferred that he would not be needed. His usual work was that of a derrick hand. It can be inferred that the work he was to do on the occasion in question was different work from that which he had been doing the day before. The employer decided that he wanted to move the rig. The foreman called for the workman to go to work at 6:30 in the morning (presumably to pick him up). The workman was not there. The employer still needed him, so the employer directed the workman to get in his car and come to work anyway. The inferences here being that the employer had furnished the workman his previous transportation but since he was needed so badly that day, he was to take his own car and come to the job-site. The employer, through its foreman, instructed the workman's wife to tell him that as soon as he came in that he was to come to the rig; that they were moving it; that they needed him to help move the rig; and that as soon as he got home he was to come out there to Goliad in his *own* car. In obedience to this directive, the workman drove directly toward the rig-site when the accident happened.

I would hold that the employer's order was unequivocal and direct. Without such an order, the workman would not have gone to work that day. This order was a special directive, an unusual order for the purpose of moving the employer's rig. It was a specific order by the employer to the employee to go to work at an unusual hour (when he got home). The evidence and the inference gained therefrom was that he was to proceed directly to the remote rig-site in his own vehicle, to help move the rig for his employer, when the accident happened. These facts bring the workman within the exception. I would hold that the workman was pursuing this directive and conferring a special benefit on the employer in the furtherance of his master's business at the time of the accident. Kuehmichel v. Western Union Telegraph Co. et al., 125 Minn. 74, 145 N.W. 788 (1914); Caver v. Eggerton, 157 Miss. 88, 127 So. 727 (1930); Underwood v. Mitchell, 389 S.W.2d 106 (Tex.Civ.App., Eastland 1965, no writ hist.); 52 A.L.R.2d 287, Anno. Employee driving own car—liability. See also these cases which reflect the same type of special mission as is apparent in the instant case. Eubanks v. Hughes Engineering Company, 369 S.W.2d 49 (Tex.Civ.App. —Ft. Worth 1963, writ ref'd n. r. e.) (em-

ployee returning to work with supplies.);
El Paso Natural Gas Co. v. Lackey et al.,
186 F.2d 155 (5th Cir. 1951) (express orders
to take truck home after finishing job);
Konick v. Berke, Moore Co., 355 Mass.
463, 245 N.E.2d 750 (1969) (employee di-
rected to go to home office to get the pay-
roll); Kadlecik v. L. N. Renault & Sons,
Inc., 156 Pa.Super. 586, 40 A.2d 866 (1945)
(employee salesman involved in accident on
way home after seeing customer); cf.,
Consolidated Underwriters v. Breedlove,
114 Tex. 172, 265 S.W. 128 (Tex.Com.App.,
1924, opinion adopted) (mechanic "subject
to call at any time" involved in accident
while returning from seeing about a bat-
tery; fact that stopped for lunch prior to
accident immaterial). Friend-Rowe Motor
Co. et al. v. Ricci et al., 293 S.W. 851 (Tex.
Civ.App.—Beaumont 1927, wr. dism.) (fa-
cilitating employer's business by conserving
time).

There was certain circumstantial evi-
dence coupled with the direct and positive
evidence together with the reasonable in-
ferences that was sufficient to uphold the
trial court's judgment. In addition, the
defendant Stapp Drilling Company as de-
fendant and employer of Jesse Hester, pre-
sumably had superior knowledge regarding
the facts and circumstances relevant to the
issues at hand. Much of the evidence was
peculiarly within the knowledge and con-
trol of the appellant. Its failure to produce
any evidence to overcome the direct and
positive evidence and the inferences to be
gained therefrom, raises a strong presump-
tion that any evidence he could have pro-
duced or his testimony, if offered, would
have been unfavorable to him. San An-
tonio & A. P. Ry. Co. v. Blair, 184 S.W.
566 (Tex.Civ.App.—San Antonio 1916, wr.
ref.); McCormick & Ray—Evidence, Sec.
100–103. See also the type of cases under
Testimony of party or interested witness,
56 Tex.Jur.2d, Sec. 210 at p. 551.

I would affirm the judgment of the trial
court.