NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2572
_____

DONNA S. CONN & GREG CONN; her husband

v.

UNITED STATES OF AMERICA,

Appellant


_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. Civil Action No. 05-1173
(Honorable David S. Cercone)

_____

Submitted Under Third Circuit L.A.R. 34.1(a),
March 25, 2010

Before: RENDELL, FUENTES, and CHAGARES, Circuit Judges.

(Opinion Filed: April 15, 2010)

_____

OPINION OF THE COURT

_____

FUENTES, Circuit Judge:

Appellee Donna Conn was injured when Dr. Maryanne Zieglar, an employee of the

United States Department of Agriculture ("USDA"), ran a red light and crashed her car

into Conn's vehicle. Conn filed suit against Zieglar and the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. After the United States Attorney for the Western District of Pennsylvania declined to certify that Zieglar was acting within the scope of her employment at the time of the accident, Zieglar petitioned the District Court to so certify; the Court held that Zieglar had been acting within in the scope of her employment and that, pursuant to the Westfall Act, 28 U.S.C. § 2679(d)(3), the United States would be substituted as the lone party defendant. The Government appeals this ruling. For the reasons that follow, we conclude that Zieglar was not acting within the scope of her employment at the time of the accident, and we will thus vacate the District Court's judgment.

## I.

We write primarily for the parties, and so we set forth only the facts and history that are relevant to our conclusion. Zieglar is a public health veterinarian for the USDA. She supervises the processing operations at fourteen meat packing plants in Western Pennsylvania. During the period relevant to this lawsuit, her days began at 7:00 a.m. and ended at 3:30 p.m., and during that time, she would make random inspections at the plants. When not making these inspections, she would work out of her primary duty location ("PDL"), which is an office located at Alfery's Sausage Company. Zieglar was authorized to drive a government automobile, but she elected instead to use her own vehicle in order to have easier access to her daughter at school. She was reimbursed for

mileage between plants, as well as for twenty-five miles of her forty-five-mile commute between work and home, except on days when she worked exclusively from the PDL, for which she received no mileage reimbursement. She kept work-related items—including slaughter knives, a government-issued laptop, and paperwork—in her car for use during her inspections. On a given day, Zieglar would commute from home to a plant, or from home to the PDL to a plant; some days she would visit multiple plants.

On September 6, 2002, Zieglar drove from home to two meat packing plants, and then to her PDL, where she worked until 3:30 p.m. At 3:30 p.m.—the end of her work day—she left the PDL and was driving to pick up her daughter from school. The school is along the same route that Zieglar took to drive home, except that it required a two-mile deviation. At 3:40 p.m., before she reached the point of that deviation (and at a time when she was within the twenty-five-mile reimbursement zone), she ran a red light and hit Conn's car, as a result of which Conn sustained severe injuries.

Conn filed suit against Zieglar and the United States, and the Government declined to certify that Zieglar was acting within the scope of her employment at the time of the accident. Zieglar filed a motion pursuant to the Westfall Act, 28 U.S.C. § 2679(d)(3), in which she urged the District Court (1) to conclude that she was acting within the scope of her employment at the time of the accident, and, thus (2) to substitute the United States as the sole defendant to Conn's suit. The District Court granted Zieglar's motion, deemed Conn's suit to be "brought against the United States," and

ordered that "the United States [] be substituted as the party defendant." Id. A bench trial ensued thereafter. The District Court awarded the Conns $3,370,708 in damages, and the Government appealed.

**II.**

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1346(b) and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review the District Court's findings of fact for clear error, and we exercise plenary review over its interpretation of the law and its legal conclusions." Commodity Futures Trading Comm'n v. Equity Fin. Group LLC, 572 F.3d 150, 154 n.8 (3d Cir. 2009) (citation omitted).

The sole issue before us concerns the propriety of the District Court's order substituting the United States as the defendant to the Conns' suit. The question of whether, under the Westfall Act, the Government should be held liable for the injuries caused by Zieglar's accident turns upon whether Zieglar was "acting within the scope of [her] office or employment" at the time of the crash. CNA v. United States, 535 F.3d 132, 146 (3d Cir. 2008) (quoting 28 U.S.C. § 1346(b)(1)). Whether a government employee is acting within the scope of her office is "defined by the applicable state law of respondeat superior," which, in this case, is that of Pennsylvania. Nationwide Mut. Ins. Co. v. Liberatore, 408 F.3d 1158, 1163 (9th Cir. 2005) (citation omitted).

When assessing the extent of an employer's responsibility for an employee's conduct, Pennsylvania courts rely upon the principles articulated in Restatement (Second)

-4-

of Agency §§ 228 and 239.  See, e.g., Winward v. Rhodewalt, 198 A.2d 623, 624 (Pa. Super. 1964).  Section 228 provides in relevant part that the "[c]onduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master . . . ."  Restatement (Second) of Agency § 228(1).  Applying prong (c) in the context of automobile accidents, the Pennsylvania Supreme Court has been clear that in order for respondeat superior liability to attach, either the automobile must have been under the master's actual or potential control at the time of the accident, or the use of the automobile must have been "of such vital importance in furthering the business of the master that the latter's actual or potential control of it at that time and place may be reasonably inferred."  Wesolowski v. John Hancock Mut. Life Ins. Co., 162 A. 166, 167 (Pa. 1932); see also Cesare v. Cole, 210 A.2d 491, 494-95 (Pa. 1965).

We agree with the Government that Zieglar was not acting within the scope of her employment at the time of her accident.  On the date of the accident, Zieglar's work day ended at 3:30 p.m., and at 3:40 p.m.—the time when the accident occurred—Zieglar had left work for the day and was driving to pick her daughter up from school.  Driving to pick up her daughter after she finished working manifestly is not "the kind [of activity Zieglar] is employed to perform."  Restatement (Second) of Agency § 228(1)(a).  Moreover, in light of the fact that Zieglar was driving on a personal errand after the

-5-

conclusion of the workday when the crash took place, her actions were not "within the authorized time and space limits" of her employment. Id. at § 228(1)(b). Rather, Zieglar was "off the premises on [her] way home at the end of regular working hours." Kadlecik v. L. N. Renault & Sons, 40 A.2d 866, 868 (Pa. Super. 1945). Finally, and perhaps most importantly, Zieglar was not acting out of a "purpose to serve" her employer at the time of the accident. Restatement (Second) of Agency § 228(1)(c). As the record makes plain, Zieglar conceded that she was attending to a personal, not work-related, matter at the time the accident occurred, and that her employer had no capacity to control her vehicle or driving route at the end of her workday. As this evidence makes clear, Zieglar's vehicle was neither under the actual or potential control of the Government at the end of her workday, nor was her use of the vehicle "of such vital importance in furthering the business of the master that the latter's actual or potential control of it at that time and place may be reasonably inferred."[1] Wesolowski, 162 A. at 167.

---

[1] The fact that Zieglar could have used a government automobile, and the fact that some of her commuting mileage was reimbursed by her employer, do not alter our analysis. As the Restatement (Second) of Agency explains by way of example:

> The master agrees with A, his servant, to pay for A's transportation upon public vehicles such as railway trains and street cars. As an alternative, A is permitted to use his own automobile for transportation, charging to the master the regular train fare . . . . In going to a place at which he is to perform work for the master, A drives his own car, carrying thereon necessary tools and materials belonging to the master. In the absence of evidence that A owes P any duty of obedience in the details of operating the automobile, such driving is not within the scope of employment.

The District Court reached a contrary conclusion by relying on cases interpreting Pennsylvania's Workmen's Compensation Act ("WCA"). But this reliance was misplaced for several reasons. First, the WCA is a "liberally construed" remedial statute, David Griffiths v. W.C.A.B. (Seven Stars Farm, Inc.), 943 A.2d 242, 255 (Pa. 2008) (citation omitted), which addresses whether an employee's conduct falls within the "course" of his or her employment; courts have recognized that this is a more expansive standard than the "scope of employment" inquiry under the Restatement (Second) of Agency § 228. See, e.g., Vadyak v. Lehigh & New England R. Co., 179 A. 435, 436 (Pa. 1935); see also Brumfield v. Sanders, 232 F.3d 376, 381 n.5 (3d Cir. 2000) (explaining that cases construing the WCA's course of employment requirement without "discuss[ing] Pennsylvania's common law of agency . . . are not relevant to [the scope of employment question]").

Moreover, the cases cited by the District Court are readily distinguishable from the facts presented here. The authorities cited by the District Court found the scope-of-employment inquiry satisfied where, e.g., the employee was on the way home from conducting a special mission or errand for the employer, see, e.g., Kadlecik, 40 A.2d at 868, or where the employee was traveling between work stations, see, e.g., Gozdonovic v. Pleasant Hills Realty Co., 53 A.2d 73, 75 (Pa. 1947), neither of which is the case here. In sum, we agree with the Government that at the time of her accident, Zieglar was not

---

Restatement (Second) of Agency § 239, illustration 4.

acting within the scope of her employment.

## III.

For the foregoing reasons, we will vacate the judgment of the District Court and remand for further proceedings consistent with this Opinion.