268 F.3d 1133 (9th Cir. 2001)
 ORION TIRE CORPORATION, A CALIFORNIA CORPORATION; CHINA TIRE HOLDINGS LIMITED, A BERMUDA CORPORATION, PLAINTIFFS-APPELLANTS,
v.
GOODYEAR TIRE & RUBBER COMPANY, INC.; GOODYEAR INTERNATIONAL CORPORATION, DEFENDANTS-APPELLEES.
 No. 99-56639
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted February 12, 2001
Filed: October 18, 2001
 
 Roger E. Zuckerman, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, D.C., Peter J. McNulty, Law Offices of Peter J. McNulty, Bel Air, CA, Fred M. Isaacs, Follansbee & Associates, Wilsonville, OR, for the plaintiffs-appellants.
 Charles A. Gilman, Cahill Gordon & Reindel, New York, New York and David T. Biderman, Perkins Coie, Santa Monica, California, for the defendants-appellees.
 Appeal from the United States District Court for the Central District of California; David O. Carter, District Judge, Presiding. D.C. No. CV-95-00221-DOC.
 Before: Beezer, T.G. Nelson and Berzon, Circuit Judges.
 Berzon, Circuit Judge:
 
 
 1
 Orion Tire Corp. ("Orion") and China Tire Holdings Ltd. ("CTHL") appeal the district court's (i) dismissal of CTHL's RICO claim for failure to state a claim under Chinese law; (ii) dismissal of CTHL's trade libel and defamation claims on grounds of forum non conveniens; and (iii) grant of summary judgment to defendants on Orion's claims of trade libel and intentional interference with prospective economic advantage. We affirm in part, reverse in part, and remand.
 
 Facts and Procedural History
 
 2
 Plaintiffs-Appellants Orion, a California corporation, and CTHL, a Bermuda corporation with headquarters in Hong Kong, sought to enter into a joint venture with the Chinese government ("China") to produce automobile tires at a factory in Dalian, China. After China awarded the joint venture to Defendant-Appellee Goodyear Tire and Rubber Co. ("Goodyear"), Orion and CTHL filed a complaint in the United States District Court for the Central District of California, alleging thirteen claims under state and federal law. Goodyear moved to dismiss for, among other grounds, failure to state a claim. The district court granted in part and denied in part the defendants' motion.
 
 
 3
 The district court determined that California law governed Orion's state claims and that Chinese law governed CTHL's state claims and federal RICO claim. Having so determined, the district court dismissed Orion's state claims and RICO claim without prejudice, for failure to state a claim, but dismissed with prejudice, for failure to state a claim under Chinese law, CTHL's claims for tortious interference with prospective economic advantage (claim 2), tortious interference with contractual relationship (claim 4), conspiracy to induce breach of contract (claim 6) and RICO (claim 13).
 
 
 4
 Orion and CTHL filed an amended complaint asserting six causes of action, all under California state law. Orion did not replead its RICO cause of action. Goodyear moved to dismiss all six claims for failure to state a claim. The district court granted in part and denied in part Goodyear's motion, dismissing Orion's claim of tortious interference with contract, after determining that Orion had no agreements legally enforceable under Chinese law.[1]
 
 
 5
 Two and one-half years later, Goodyear moved for summary judgment, arguing (i) that Orion lacked standing to bring its claims, because its predecessor in interest had not properly assigned the claims to Orion, and (ii) that CTHL's remaining claim, for trade libel/defamation, should be dismissed on forum non conveniens grounds. The district court granted Goodyear's motion on both grounds and entered final judgment in Goodyear's favor. Plaintiffs-Appellants timely appealed, challenging both aspects of the summary judgment order as well as the district court's dismissal of CTHL's RICO claim for failure to state a claim under Chinese law.
 
 
 6
 While this appeal was pending, CTHL filed a duplicative action in the United States District Court for the Northern District of Ohio. That court dismissed CTHL's complaint, holding that CTHL's claims were barred by claim preclusion. China Tire Holdings Ltd. v. Goodyear Tire & Rubber Co., 91 F. Supp. 2d 1106 (N.D. Ohio 2000). The Ohio District Court also remarked that were it not required to dismiss on claim preclusion grounds, it "would adopt the [California] district court's reasoning and independently dismiss the plaintiff's claims on the ground of forum non conveniens." China Tire, 91 F. Supp. 2d at 1111 n.4.
 
 Discussion
 A. Preclusion
 
 7
 Goodyear contends, as an initial matter, that CTHL's appeal should be barred by claim preclusion based on the Ohio judgment.[2] Goodyear's argument reflects a basic misunderstanding of the doctrine of claim preclusion.
 
 
 8
 The doctrine of claim preclusion establishes that"an adverse judgment from which no appeal has been taken is res judicata and bars any future action on the same claim." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.4 (1981) (emphasis added). The direct appeal of a judgment that predates the judgment asserted to have claim preclusive effect is not a "future action" in this sense. See Flood v. Harrington, 532 F.2d 1248, 1250 (9th Cir. 1976) (holding that a decision entered after the judgment on appeal "can scarcely constitute a bar to the instant action, decided below on an earlier date"); cf. Alpha Epsilon Phi Tau Chapter Housing Ass'n v. City of Berkeley, 114 F.3d 840, 843 n.3 (9th Cir. 1997) (holding that an intervening state court decision according res judicata effect to the decision presently on appeal does not divest this court of jurisdiction). Thus, the doctrine of res judicata does not operate to bar direct review of a district court judgment, even if that judgment has been accorded res judicata effect by other courts since it was entered. Flood, 532 F.2d at 1250.
 
 
 9
 Indeed, Goodyear's argument turns res judicata on its head. The doctrine is founded on the principle that "[a] judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same cause." Federated, 452 U.S. at 398 (emphasis added). To permit another action upon the same cause to displace the direct review of the first judgment would be to invert the doctrine's precepts. It is therefore no wonder that, as far as we can ascertain, there is no case in which res judicata has been applied as Goodyear proposes.
 
 
 10
 Reed v. Allen, 286 U.S. 191 (1932), cited by Goodyear, is not to the contrary. The petitioner in Reed obtained an equity judgment against Allen respecting the right to collect rents from a property, which Allen appealed. During the pendency of that appeal, Reed brought an action in ejectment with respect to the property, which he won because the second court accorded res judicata effect to the first judgment. Allen did not appeal the second unfavorable judgment, but prevailed in his appeal on the first. Allen then brought a third action seeking to eject Reed from the property.
 
 
 11
 The Supreme Court held that this third action -- in essence a collateral attack on the second judgment -- was barred by res judicata. Reed offers no solace to Goodyear, as we are not here confronted with a third action, but with an appeal from the judgment in the first. Rather, Reed supports our understanding of res judicata: Far from suggesting that the appeals court that heard Allen's appeal of the first judgment ought to have rejected that appeal based on the "res judicata" effect of the second judgment, the Court in Reed appears to have assumed the contrary -- that is, that the reversal of the first judgment was within the power of the appeals court.[3]
 
 B. CTHL's RICO claim
 
 12
 The district court determined that Chinese law governed CTHL's state law causes of action and federal RICO claim, and dismissed those claims for failure to state a claim under Chinese law. CTHL contends that the district court erred with respect to the RICO claim. We agree, and vacate the dismissal with prejudice and remand with instructions to (i) permit CTHL to amend its RICO claim, and (ii) determine whether the claim, as amended, supports the extraterritorial application of RICO under our caselaw.
 
 
 13
 The district court's choice of law analysis was proper with respect to the general question whether the law of California or China governed the dispute between CTHL and Goodyear. Where a federal statute is involved, however, a choice of law analysis does not apply in the first instance. The initial question, rather, is whether Congress intended the statute in question to apply to conduct occurring outside the United States. This is a question of statutory interpretation, see Equal Employment Opportunity Comm'n v. Arabian American Oil Co., 499 U.S. 244, 247 (1991), not a question of choice of law. The district court therefore erred in dismissing CTHL's RICO claim with prejudice, without making the appropriate statutory inquiry.
 
 
 14
 Goodyear argues that even if the district court erred in failing to consider the statutory question, we should affirm dismissal of the RICO claim because amendment would be futile. Because of the manner in which it viewed the matter, the district court did not inquire into the futility of amendment, instead dismissing without providing leave to amend. CTHL's Reply Brief represents that CTHL could amend its complaint to allege facts that would state a RICO cause of action both substantively and with regard to the requisite connection to the United States delineated in applicable cases. See Butte Mining PLC v. Smith, 76 F.3d 287, 291-92 (9th Cir. 1996) (holding that RICO did not apply to allegations of conduct in United States that was "merely preparatory" to the predicate acts of fraud, where it was undisputed that the fraud itself occurred entirely outside the United States); cf. Republic of the Philippines v. Marcos, 862 F.2d 1355, 1358-59 (9th Cir. 1988) (en banc) (permitting application of RICO in case of fraudulent scheme to expropriate money from Philippines and invest it in United States); see also United States v. Kim, 246 F.3d 186, 190 (2d Cir. 2001); North South Finance Corp. v. Al-Turki, 100 F.3d 1046, 1051-53 (2d Cir. 1996); Concern Sojuzvneshtrans v. Buyanovski, 80 F. Supp. 2d 273, 277-78 (D. N.J. 1999).
 
 
 15
 The general representations in CTHL's Reply Brief regarding possible amendments, considered without regard to an extra-record declaration,[4] are consistent both with the factual allegations in the complaint in this case and with the somewhat more specific allegations in the Ohio complaint. Such unsubstantiated versions of events proffered by counsel on appeal are, of course, not evidence. But complaints may not be dismissed with prejudice unless the allegations of the complaint make clear that plaintiff cannot state a claim. See Lee v. City of Los Angeles, 250 F.3d 668, 692 (9th Cir. 2001).
 
 
 16
 Where counsel is able to posit possible amendments that would be consistent with the operative complaint and could also possibly state a claim for relief, the complaint should not be dismissed on its face with prejudice. See Orthmann v. Apple River Campground, Inc., 757 F.2d 909, 914 (7th Cir. 1985); see also Pegram v. Herdrich, 530 U.S. 211, 230 & n.10 (2000) ("Though this case involves a motion to dismiss under [Rule] 12(b)(6), and the complaint should therefore be construed generously, we may use [Respondent's ] brief to clarify allegations in [the] complaint whose meaning is unclear."); Dawson v. General Motors Corp. , 977 F.2d 369, 372 (7th Cir. 1992) ("This rule is necessary to give plaintiffs the benefit of the broad standard for surviving a Rule 12(b)(6) motion as articulated in Hishon [v. King & Spaulding, 467 U.S. 69 (1984)] and Conley v. Gibson, 355 U.S. 41, 45-46 . . . (1957).")
 
 
 17
 We are therefore unwilling to affirm the dismissal on the ground of futility at this stage. We leave to the district court on remand, after further discovery if necessary, the task of determining whether CTHL's allegations and evidence support extraterritorial application of RICO under the facts of this case.
 
 C. Assignment of claims to Orion
 
 18
 The Orion Tire Corporation that is a party to this action ("New Orion" or "Orion") was incorporated in 1994, after many of the events giving rise to the complaint occurred. The entity of the same name that existed at the time of the alleged defamation ("Old Orion") sold certain of its assets in 1994 to the OTDC Acquisition Corporation, which then renamed itself Orion Tire Corporation. So New Orion is a successor corporation to Old Orion.
 
 
 19
 The district court granted summary judgment for Goodyear on Orion's state law trade libel/defamation and intentional interference with prospective economic advantage causes of action after determining that they were not among the assets that Old Orion transferred to New Orion. At issue, consequently, is whether the "Asset Purchase Agreement " executed between Old Orion and New Orion on April 25, 1994 included the present lawsuit as one of the assets conveyed to New Orion.
 
 
 20
 Under the terms of that agreement, New Orion agreed to purchase, and Old Orion agreed to sell, in addition to other specifically enumerated assets, "[a]ll other intangible assets and goodwill of Seller related to its tire distribution business in the United States . . . ." The parties contest whether the quoted language includes the causes of action asserted by New Orion against Goodyear. The district court granted summary judgment based on its finding that, as a matter of law, neither the terms of the Asset Purchase Agreement nor the surrounding circumstances support "a finding that Old Orion transferred to New Orion any choses of action that arose from Old Orion's business dealings in [China]."
 
 
 21
 Orion argues that there was a triable issue as to the parties' intent with respect to whether the phrase "all other intangible assets and goodwill of Seller related to its tire distribution business in the United States" encompasses the state law causes of action. We agree, and reverse the grant of summary judgment.
 
 
 22
 Under California law, the interpretation of an assignment clause, like the interpretation of contract terms generally, is a question of the intent of the parties and is typically a question of fact for the jury. See McCown v. Spencer, 87 Cal. Rptr. 213, 219 (Ct. App. 1970) ("If from the entire transaction and the conduct of the parties it clearly appears that the intent of the parties was to pass title to the chose in action, then an assignment will be held to have taken place . . . .[I]intent is of major significance."); Knott v. McDonald's Corp., 147 F.3d 1065, 1067 (9th Cir. 1998) (noting broad rule that "the intent of the parties to an [ambiguous] assignment is a question of fact to be derived not only from the instrument executed by the parties, but also from the surrounding circumstances").
 
 
 23
 With respect to both intangible assets generally and goodwill specifically, the district court interpreted the quoted language to convey only that existing "in the United States," and thus not to encompass alleged injury to Orion's reputation among officials of the Chinese government. But this is not the most natural reading of the Assignment Agreement. The Agreement applies not to intangible assets and goodwill existing in the United States, but to intangible assets and goodwill "related to [Orion's] tire distribution business in the United States." The plain meaning of this language encompasses more than the district court recognized.
 
 
 24
 For instance, goodwill existing in China but related to Orion's competence to distribute tires in the United States -- precisely the goodwill alleged to have been injured -- would seem plainly to fall within the language of the Assignment. At the very least, a jury could reasonably have read the agreement to indicate that the parties intended to assign such good-will. Thus, the defamation alleged in the complaint, pertaining generally to Orion's competence as a tire distributor, cannot be said, as a matter of law, to cause no injury to that portion of Old Orion's intangible assets and goodwill acquired by New Orion.
 
 
 25
 Similarly, New Orion and Old Orion could reasonably have expected (and a jury could reasonably find) that the general assignment clause included the cause of action for intentional interference with prospective economic advantage. It is not evident as a matter of law that Old Orion's prospect of a commercially advantageous tire-manufacturing opportunity in China, with tires to be distributed worldwide, including in the United States, was not part of the "other intangible assets and goodwill related to Orion's tire distribution business in the United States" which New Orion acquired from Old Orion.[5] Thus, the district court's grant of summary judgment was in error.
 
 D. CTHL's state-law claims
 
 26
 The district court dismissed CTHL's state law claims on forum non conveniens grounds. Goodyear argues that the district court lacked diversity jurisdiction over CTHL's state law claims, and that, in the alternative, the forum non conveniens dismissal was proper.
 
 
 27
 In light of the rulings announced above, it would be inappropriate for us to review at this juncture either the diversity jurisdiction or forum non conveniens issues. If CTHL's RICO action goes forward on remand, there may be supplemental jurisdiction to decide CTHL's state law claims as well, under 28 U.S.C. §§1367, making determination of the novel issue of diversity jurisdiction raised by this case unnecessary.[6] And since CTHL's RICO action may prove viable and Orion's state law causes of action can now proceed, the district court may well take a different view in balancing the factors pertinent to the forum non conveniens determination. In particular, the balance of the public and private law factors pertinent to the forum non conveniens analysis on CTHL's state law claims, see, e.g., Lueck v. Sundstrand Corp., 236 F.3d 1137, 1145 (9th Cir. 2001), may be affected if some causes of action remain in federal court, because CTHL's state law claims share some facts, and are therefore likely to require some similar discovery, with the RICO and Orion state law causes of action. Also, our choice of law determination with regard to the RICO cause of action could possibly be of some significance in balancing the pertinent factors. Id. at 1148 (noting that a court must make a choice of law determination before dismissing a case on forum non conveniens grounds, but that the circumstances in which choice of law is of determinative significance are limited).
 
 
 28
 By pretermitting the forum non conveniens inquiry, we mean to state no view as to whether the RICO claim will be adequately repleaded on remand or whether the forum non conveniens analysis will necessarily reach a different result because of today's rulings. We leave those issues for the district court to address in the first instance.
 
 Conclusion
 
 29
 The judgment of the district court is REVERSED with respect to Orion's state law trade libel/defamation and intentional interference with prospective economic advantage causes of action and CTHL's RICO claim, and REMANDED for further proceedings. The judgment is VACATED with respect to the forum non conveniens dismissal and REMANDED for reconsideration of that issue in light of this opinion.
 
 
 30
 REVERSED in part, VACATED in part, and REMANDED. Costs are awarded to the appellant.
 
 
 
 Notes:
 
 
 [1]
 This ruling is not before us on appeal.
 
 
 [2]
 In federal courts, a district court judgment is "final" for purposes of res judicata. Tripati v. Henman, 857 F.2d 1366, 1367 & n.1 (9th Cir. 1988).
 
 
 [3]
 Goodyear contends that the Ohio district court judgment can be read not merely as based on claim preclusion, but also as a decision on forum non conveniens grounds. As noted above, the Ohio district court did remark that were it not required to dismiss on claim preclusion grounds, it "would adopt the [California] district court's reasoning and independently dismiss the plaintiff's claims on the ground of forum non conveniens." China Tire, 91 F. Supp. 2d at 1111 n.4. This dictum is not an adjudication on the merits of the forum non conveniens issue, and, even if it were, it would not bar our review of the judgment before us on appeal. See Flood, 532 F.2d at 1250.
 
 
 [4]
 Portions of CTHL's Reply Brief were stricken insofar as they rely on a declaration that is not part of the record. We now grant CTHL's Motion to Take Judicial Notice of the complaint filed in the Ohio district court proceedings previously discussed and deny appellees' request to strike CTHL's Reply Brief.
 
 
 [5]
 The district court placed great emphasis on the absence of any specific clause assigning the state law causes of action. Given that the general assignment clause reasonably may be read to encompass those claims, however, there is no logical basis for drawing an adverse inference as to the parties' intent from this omission. And, in any event, it was improper to draw an inference against the nonmoving party at the summary judgment stage. Block v. City of Los Angeles, 253 F.3d 410, 421 (9th Cir. 2001).
 
 
 [6]
 Goodyear contends that the district court lacked diversity jurisdiction over CTHL's state law claims against it because as a citizen of a British Dependent Territory ("BDT"), CTHL is not a "citizen or subject of a foreign state" within the meaning of 28 U.S.C. 1332(c)(1). This argument has not been addressed in this Circuit, and it has divided (although unevenly) our sister circuits. The Third, Fourth, and Seventh Circuits have all held that citizens of BDTs are "subjects of foreign states" for purposes of the diversity statute. See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410 (3d Cir. 1999) (holding that a Hong Kong corporation is properly regarded as a "subject of" the United Kingdom for purposes of alienage jurisdiction); Koehler v. Dodwell, 152 F.3d 304, 308 (4th Cir. 1998) (same); Wilson v. Humphreys (Cayman) Ltd., 916 F.2d 1239, 1243 (7th Cir. 1990) ("Certainly, the exercise of American judicial authority over the citizens of a British Dependent Territory implicates this country's relationship with the United Kingdom -- precisely the raison d'etre for applying alienage jurisdiction."). Only the Second Circuit has taken the view advocated by Goodyear. See Matimak Trading Co. v. Khalily, 118 F.3d 76 (2d Cir. 1997) (holding that citizens of BDTs are neither citizens nor subjects of a foreign state); but cf. Koehler v. Bank of Bermuda, 229 F.3d 187 (2d Cir. 2000) (Sotomayor, J., dissenting from denial of reh'g en banc).