**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NATIONWIDE MUTUAL INSURANCE
COMPANY,
              *Plaintiff-Appellant,*

              v.

WILLIAM JOHN LIBERATORE; UNITED
STATES OF AMERICA; DOLLAR RENT-
A-CAR SYSTEMS, INC.; SHERI LEANN
IVEY,

              *Defendants-Appellees.*

No. 04-15744

D.C. No.
CV-03-05903-LJO

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, Magistrate Judge, Presiding

Argued and Submitted
April 13, 2005—San Francisco, California

Filed May 12, 2005

Before: John T. Noonan, David R. Thompson, and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge Thompson

## COUNSEL

Ralph E. Laird, Auburn, California, for the plaintiff-appellant.

Kristi C. Capetan, Assistant United States Attorney, Fresno, California, for the defendants-appellees.

## OPINION

THOMPSON, Senior Circuit Judge:

Nationwide Mutual Insurance Company appeals the district court's summary judgment in this insurance coverage dispute involving the United States government.[1] Underlying the coverage dispute is a state tort action arising out of an auto accident. The defendant driver, William John Liberatore, was insured by Nationwide, and at the time of the accident was an active duty member of the armed services of the United States. Under the terms of the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680 (2004), because Liberatore was a federal employee, the federal government

---

[1]In the district court, this case was heard and decided by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). In this appeal, we refer to the decisions made by the Magistrate Judge as decisions by the district court.

would have responsibility for indemnifying him if, at the time of the accident, he were acting within the scope of his employment. The district court determined that Liberatore was not acting within the scope of his employment, leaving Nationwide to indemnify Liberatore for any damages awarded in the underlying action. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

# I

## FACTS AND PROCEEDINGS

On the morning of July 18, 2001, Liberatore, a Command Master Chief in the United States Navy, flew from Norfolk, Virginia to Los Angeles, California. Liberatore was traveling from his permanent duty station in Norfolk on temporary additional detached duty (TAD) travel orders which authorized him to travel via Los Angeles to Naval Air Weapons Station China Lake and Naval Air Weapons Station Point Mugu, and then to a Command Career Counselor Symposium in Nashville, Tennessee. According to the officer who authorized the TAD orders, Liberatore's travel to the bases in California was intended to achieve two purposes: first, to permit him to meet with his counterpart at the Pacific Fleet Airborne Early Warning Wing; and second, to permit him to visit and to consider accepting orders for his next permanent duty assignment to either China Lake or Point Mugu.

Although Liberatore's travel orders referenced the locations of his travel, the orders did not impose specific restrictions on his travel or activities. According to the authorizing officer, the orders implicitly contemplated that Liberatore would enjoy periods of liberty (*i.e.*, free time) when he was not engaged in fulfilling the duties specified in his orders.

Liberatore understood that he would have some free time during his trip, and accordingly planned that upon his arrival in Los Angeles he would drive to Bakersfield, California, to

meet a friend, Sheri Ivey. He intended to drive himself and Ivey to China Lake the next day, then to return Ivey to her home in Bakersfield. Thereafter, he planned to visit Point Mugu, as well as another unspecified base further north, and finally if time permitted, the Naval Air Station in San Diego.

According to this plan, upon his arrival in Los Angeles, Liberatore picked up a rental car from Dollar Rent-A-Car pursuant to a prearranged, pre-paid reservation made by his command. He left the airport and drove to Ivey's home in Bakersfield. Ivey was not home when he arrived, so he drove to a nearby Veterans of Foreign Wars post and drank three beers while he waited for her to come home. Liberatore then picked Ivey up, and together they decided to drive to State Line, Nevada to gamble and to spend the night.

On the way to State Line, Liberatore bought a twelve-pack of beer at a convenience store. Both Liberatore and Ivey drank beer in the car during the trip. They had been driving for about an hour when they came upon a traffic backup on the freeway caused by an earlier accident. Liberatore did not notice that traffic had stopped until it was too late for him to prevent his car from rear-ending a large truck. Liberatore suffered minor injuries from the accident, but Ivey suffered multiple, serious injuries. Liberatore was arrested at the scene of the accident for driving while under the influence, and was later convicted of that offense. Liberatore did not visit the military sites he had intended, nor did he inform his superiors of the accident.

The accident spawned two related lawsuits: an underlying civil action filed by Ivey alleging negligence claims against Liberatore, Dollar, and the United States, *Ivey v. United States*, *et al.*, No. CV-F-02-6138 (E.D. Cal. Feb. 5, 2004); and the declaratory judgment action at issue in this appeal filed by Nationwide against Liberatore, the United States, Dollar, and Ivey, *Nationwide Mutual Ins. Co. v. Liberatore*, *et al.*, No. CV-F-03-5903 (E.D. Cal. Feb. 5, 2004). The cases were not

consolidated, but were assigned as related cases to be heard, with the parties' consent, by a magistrate judge. *See* 28 U.S.C. § 636(c).

In the *Ivey* case, the United States filed a motion for summary judgment in which the government argued that Liberatore was not acting within the scope of his employment at the time of the accident, and therefore the Federal Tort Claims Act wavier of sovereign immunity from suit for personal injuries caused by an employee of the United States government did not apply. In the *Nationwide* case, the United States filed a motion to dismiss the complaint for failure to articulate a basis for federal subject-matter jurisdiction, and Nationwide filed a motion for summary judgment. Nationwide argued Liberatore had been acting within the scope of his employment when the accident occurred and, consequently, Nationwide's insurance coverage did not apply. The parties to both actions agreed that the scope of employment question was the central issue in both cases, and therefore agreed to coordinated consideration of the motions for dismissal and for summary judgment.

In the *Ivey* case, the district court granted the government's motion for summary judgment and remanded Ivey's remaining claims, against Dollar and Liberatore, to state court. This judgment was not appealed. On the same day, by separate order in the *Nationwide* case, the district court denied the government's motion to dismiss for lack of subject-matter jurisdiction and denied Nationwide's motion for summary judgment. The court concluded that Liberatore was not acting "in the line of duty" when the accident occurred and therefore his negligence could not properly be attributed to the government. Judgment was entered against Nationwide, and it appeals.

## II

## DISCUSSION

### A.   Subject-Matter Jurisdiction

We begin by addressing the government's contention that the district court lacked subject matter jurisdiction because Nationwide's complaint inadequately pled federal subject matter jurisdiction. The existence of subject-matter jurisdiction is a question of law which we review de novo. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005).

[1] In its complaint, Nationwide expressly sought relief under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 (2004). Because the Declaratory Judgment Act does not by itself confer federal subject-matter jurisdiction, Nationwide was required to plead an independent basis for federal jurisdiction. It did not. Nevertheless, Nationwide's complaint expressly states that resolution of its claims would require the federal court to apply the Federal Tort Claims Act, a clear indication that Nationwide's complaint presented a federal question giving rise to federal subject-matter jurisdiction. Although Nationwide should have specified the existence of jurisdiction under 28 U.S.C. § 1331, its failure to do so in this case amounted to no more than inartful pleading, an error that "does not in itself constitute an actual defect of federal jurisdiction." *Jacobs v. Patent Enforcement Fund, Inc.*, 230 F.3d 565, 568 n.3 (2d Cir. 2000).[2] Because the existence

---

[2]Although it is preferable that a district court require formal amendment of a defective complaint, *see* 28 U.S.C. § 1653; *Snell v. Cleveland, Inc.*, 316 F.3d 822, 828 (9th Cir. 2002), formal amendment is not required when the reviewing court can readily recognize the existence of jurisdiction. *Odishelidze v. Aetna Life & Cas. Co.*, 853 F.2d 21, 25 (1st Cir. 1988). In this case, we agree with the district court that the existence of federal question jurisdiction was readily discernable from the face of the complaint, and therefore amendment was not necessary to cure Nationwide's technical pleading defect.

of federal subject-matter jurisdiction, predicated on federal question jurisdiction, was clear, the district court did not err by denying the government's motion to dismiss.

## B.   Issue Preclusion

The government also argues that because the identical issue of Liberatore's scope of employment was litigated in the *Ivey* case (in which Nationwide was not a party), Nationwide is bound by the decision in the *Ivey* case that resolved that issue against the position Nationwide asserts in this case. We reject this interpretation of our law of issue preclusion.

**[2]** We addressed a similar argument in *Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133 (9th Cir. 2001). In *Orion Tire*, the appellee argued that the appeal was barred by claim preclusion based upon a judgment post-dating the judgment on appeal. *Id.* at 1135. We rejected the appellee's position, noting the fundamental difference between the preclusive effect of a district court judgment upon a future action and its effect upon an action that predates the relevant judgment. *Id.* at 1135-36. Although a district court judgment carries preclusive effect going forward, it cannot operate to bar direct review of an extant judgment. *Id.* at 1136. To conclude otherwise would

> turn[ ] res judicata on its head. The doctrine is founded on the principle that "[a] judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected *only by a direct review* and not by bringing another action upon the same cause." To permit another action upon the same cause to displace the direct review of the first judgment would be to invert the doctrine's precepts.

*Id.* (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).

**[3]** The only relevant difference as to the preclusion issue between this case and *Orion Tire* is the timing of the two judgments—here, both judgments were entered on the same day, while in *Orion Tire*, the judgment being appealed was entered before the judgment allegedly precluding the appeal. But the applicable principle is the same: a decision entered coincident with the judgment on appeal, just as a judgment entered after the judgment on appeal, "can scarcely constitute a bar to the instant action." *Flood v. Harrington*, 532 F.2d 1248, 1250 (9th Cir. 1976). We conclude that the scope of employment issue Nationwide seeks to have us review in this appeal is not precluded by the district court's decision resolving that issue against Nationwide the same day in the *Ivey* case.

## C.  Scope of Employment

We now turn to the question whether Liberatore was acting within the scope of his employment at the time of the accident. We review de novo the district court's ruling on this issue. *Beentjes v. Placer County Air Pollution Control Dist.*, 397 F.3d 775, 777 (9th Cir. 2005).

**[4]** The Federal Tort Claims Act waives the sovereign immunity of the United States and provides a cause of action against the government for persons injured as a result of "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under the circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Whether a member of the armed services of the United States was acting within the scope of his employment at the time of an alleged negligent or wrongful act depends on whether the individual was "acting in line of duty." 28 U.S.C. § 2671. "The scope of employment inquiry, including, in the military context, whether the employee was 'acting in line of duty,' is defined by the appli-

cable state law of respondeat superior." *Lutz v. Sec'y of the Air Force*, 944 F.2d 1477, 1488 (9th Cir. 1991). In this case, because the allegedly negligent act took place in California, California provides the controlling law. 28 U.S.C. § 1346(b); *Miller v. United States*, 945 F.2d 1464, 1466 (9th Cir. 1991).

**[5]** Under California's law of respondeat superior, employers are liable for acts of their employees occurring within the scope of their employment. *Farmers Ins. Group v. County of Santa Clara*, 906 P.2d 440, 448 (Cal. 1995). The California Supreme Court has held that an employee is acting within the scope of his employment

> when in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one that may fairly be regarded as typical of or broadly incidental to the enterprise undertaken by the employer.

*Id.* (italics deleted) (internal quotation marks omitted); *see also Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 907 P.2d 358, 362 (Cal. 1995) (noting that the test is not one of "but for" causation, but rather depends upon whether the risk of the tortious act was "inherent in the working environment or typical of or broadly incidental to the enterprise the employer has undertaken.").

**[6]** This test has been interpreted broadly to include within the scope of employment an employee's acts of personal convenience during working hours, as well as acts of the employee that combine personal business with the business of the employer. *Farmers Ins. Group*, 906 P.2d at 448. But the scope of employment inquiry is not boundless. Thus, an employer will not be held liable for an employee's conduct "if

the employee substantially deviates from the employment duties for personal purposes." *Id.* at 449 (italics deleted).

We have previously applied California's law of respondeat superior to determine whether the tortious acts of servicepersons occurred within the scope of employment. In these cases we have primarily examined the objectives being furthered by the employee's conduct at the time of the accident.

In *Chapin v. United States*, 258 F.2d 465 (9th Cir. 1958), an Army private was involved in a car accident while traveling between duty stations on permanent change-of-station travel orders. *Id.* at 466. We determined that under California law, the serviceperson had not been acting within the scope of his employment at the time of the accident because the act of traveling was not part of the serviceperson's duties. *Id.* at 470. We also noted the importance to our conclusion of the government's relatively limited degree of control over the serviceperson during the completion of his travel. *Id.* at 469-470.

Similarly, in *United States v. McRoberts*, 409 F.2d 195 (9th Cir. 1969), we held that a serviceperson was not acting within the scope of his employment when he was involved in an accident while on leave incident to authorized travel. We relied principally on the importance of the employee's status at the time of the incident, noting that the employee's "leave of absence en route, free of any obligation to his employer, permitted the inference that the employee was not furthering his employer's purposes when the accident occurred." *Id.* at 197. (quoting *United States v. Romitti*, 363 F.2d 662, 665-66 (9th Cir. 1966)).

In *Murphey v. United States*, 179 F.2d 743 (9th Cir. 1950), we concluded that an Air Force sergeant who was specifically authorized to drive servicepersons in a military vehicle into town for recreational purposes was acting within the scope of his employment at the time of an accident involving the vehicle. *Id.* at 744. In reaching this result, we did not hold "that

in any case where the soldier is on a frolic of his own he can make the government liable simply because he there found entertainment." *Id.* at 745-46. Rather, the serviceperson driving the military vehicle was acting under the specific direction of, and with the purpose intended by, his employer. *See id.* at 746.

**[7]** Having considered California law, we conclude Liberatore was not acting within the scope of his employment by the government at the time of the accident. Although he was authorized to enjoy liberty while fulfilling the duties contemplated by his travel orders, at the time of the accident Liberatore was on a frolic of his own in which he substantially deviated from the employer's purposes. That the Navy had no objection to Liberatore's use of his free time and the pre-paid rental car for personal purposes does not render his conduct in this case within the scope of his governmental employment.

**[8]** The courts of California have occasionally asked, as a supplementary means to determine the inherent risk of an employee's conduct, whether an occurrence was a generally foreseeable consequence of the employee's activity. *See Farmers Ins. Group*, 906 P.2d at 448; *Lisa M.*, 907 P.2d at 362. An employee's conduct is foreseeable if, "in the context of the particular enterprise[,] [it] is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." *Farmers Ins. Group*, 906 P.2d at 464 (Mosk, J., dissenting) (italics deleted). Foreseeability in this context is not the same as foreseeability as a test for negligence, but rather looks specifically to the employer's expectations arising out of the particular employment related activity. *See id.*

**[9]** Review of the circumstances of this case under California's supplemental foreseeability test bolsters our conclusion that Liberatore was not acting within the scope of his employment at the time of the accident. Liberatore's relevant personal conduct was not so foreseeable by his employer that his

employer could fairly be held liable for damages resulting from an accident caused by that conduct.

## III

## CONCLUSION

Nationwide's complaint was adequate to indicate the existence of federal subject-matter jurisdiction pursuant to 28 U.S.C. § 1331; thus, the district court had federal subject matter jurisdiction. Nationwide's claim in this appeal is not precluded because a parallel claim was decided on the same day in the *Ivey* case against the position Nationwide advocates in this case. Nationwide's claim fails, however, on its merits. At the time of the accident, Liberatore was not acting within the scope of his employment by the United States government. Because Liberatore was not acting within the scope of that employment, the United States is not liable for damages caused by his alleged negligence.

AFFIRMED.