

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-20-2005

# In Re: Bayside

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4407

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"In Re: Bayside " (2005). *2005 Decisions.* Paper 83.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/83

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-4407

———————

IN RE: BAYSIDE PRISON LITIGATION

William Fauver, Gary Hilton,
Theodore Roth, Scott Faunce
and Richard Hinckley,
                                    Appellants

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 97-cv-05127
District Judge:  The Honorable Robert B. Kugler

———————

Submitted Under Third Circuit LAR 34.1(a)
November 17, 2005

———————

Before: BARRY and AMBRO, <u>Circuit Judges</u>, and POLLAK,[*] <u>District Judge</u>

———————

(Filed: December 20, 2005)

———————

OPINION

———————

———————

[*]Honorable Louis H. Pollak, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

BARRY, Circuit Judge

Appellants, Bayside State Prison administrators and Department of Corrections officials, appeal from an adverse judgment entered in the United States District Court for the District of New Jersey. They raise but one issue – the District Judge abused his discretion when he refused their request to bifurcate the individual and supervisory liability claims at appellee Laverna White's trial. We will affirm.

## I. BACKGROUND

In July 1997, an inmate at Bayside State Prison in New Jersey ("Bayside") killed a prison guard. In response to the killing, Bayside was put on "lock-down," and specially trained riot officers from the Special Operations Group ("SOG") were brought in to assist the prison's regular corrections officers.[1] In October 1997, several hundred Bayside inmates filed a complaint in the United States District Court for the District of New Jersey claiming that Bayside prison guards and SOGs used excessive force against them during the course of this 30-day lock-down.[2] In addition to direct "individual liability claims" against specified officers and SOGs, the inmates also brought claims against prison administrators and Department of Corrections officials, who they allege were aware of the pattern and practice of unconstitutional abuse, and did nothing to address it

---

[1] The SOG is "a specially assembled, trained, outfitted and directed team of prison guards, drawn from various correctional institutions." (Da 536.)

[2] The Sixth (and final) Amended Complaint named over 700 plaintiffs.

(the "supervisory liability claims").[3]

Over the next two years, a number of related cases were filed in the District Court and consolidated with the original case. In September 1999, plaintiffs moved for class certification. The District Court denied the motion, "finding that the Complaint alleged that Plaintiffs suffered widely varying types of injury at different times and at the hands of many different defendants, thus, 'individual issues overwhelmed those that might be viewed as common.'" *In Re: Bayside Prison Litig.*, 190 F. Supp. 2d 755, 758 (D.N.J. 2002). The District Court then commenced trying the numerous individual cases in separate one-week jury trials.[4] As of April 2005, thirteen individual trials had been held, including Laverna White's trial.[5]

On the first day of White's trial, the defendants moved to bifurcate the individual liability and supervisory liability claims. The District Court denied the motion. After a brief trial, the jury found that White had proved his claims, and awarded damages. The

---

[3] Notably, many of the plaintiffs, including Laverna White, were unable to identify, and thus did not name as defendants, the specific corrections and SOG officers who allegedly assaulted them.

[4] The District Court tried all of the claims for injunctive relief in a bench trial held in August 2004. In October 2004, the Court entered a judgment "in favor of defendants and against plaintiffs finding no cause of action on all claims for injunctive relief." *In Re: Bayside Prison Litigation (Injunctive Relief)*, Civ. No. 97-5127, Judgment in Favor of Defendants and Against Plaintiffs on All Claims for Injunctive Relief (Oct. 19, 2004).

[5] The Laverna White trial was the third individual trial in the District Court. Although the claims of approximately 350 plaintiffs have been dismissed with prejudice for failure to make discovery, the claims of more than 300 inmates have yet to be tried and resolved.

3

District Court entered judgment in White's favor. Shortly thereafter, defendants moved for a judgment as a matter of law and "renew[ed] their motion for a mistrial based on . . . the Court's refusal to bifurcate the trial." (Da 005.) The District Court denied the motion in an order dated October 21, 2004. Defendants filed a notice of appeal "from the Order and Opinion of the District Court, entered herein on October 21, 2004, denying the defendants' motion for separate trials."[6] (Da 001.)

## II. DISCUSSION

A district judge may bifurcate a trial "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed. R. Civ. P. 42(b). The decision to bifurcate is within a district judge's sound discretion. We have recognized that "the trial judge is entrusted with discretion [to decide case management issues, such as bifurcation] because he is in a far better position than we to appraise the effect of a particular procedure on the parties." *Reed v. Philadelphia, Bethlehem & New England R.R. Co.*, 939 F.2d 128, 133 (3d Cir. 1999). Thus, we will overturn a decision to deny a request to bifurcate only upon a clear showing of abuse of discretion. *Barr Laboratories v. Abbott Laboratories*, 978 F.2d 98, 105 (3d Cir. 1992). An abuse of discretion "may be found where the 'district court's decision rests upon a

---

[6] Based on this language, it appears that the defendants are appealing from an interlocutory order denying their motion for bifurcation. This is misleading, however. In fact, the denial of the motion is the only issue being raised on the defendants' appeal from the October 21 final order, which order disposed of all the remaining issues in White's case.

clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 783 (3d Cir. 1995).

Appellants argue, first, that refusing to order separate trials on White's individual and supervisory liability claims was an abuse of discretion because separate trials would have "promoted efficiency and judicial economy." Appellants' Br. at 23. In order to establish supervisory liability under § 1983, the argument goes, White first had to prove an underlying constitutional violation–*i.e.*, that his constitutional right to be free from cruel and unusual punishment was violated by individual officers in Bayside prison. Thus, a jury determination that excessive force was *not* used against White would have obviated the need to litigate his supervisory liability claim.[7] Appellants are correct that bifurcation "is *appropriate* where litigation of one issue . . . may eliminate the need to litigate a second issue." *Id.* (emphasis added). However, bifurcation is certainly not *required* in these circumstances, especially when, as here, the "issues are so closely interwoven that the plaintiff would have to present the same evidence twice in separate

---

[7] Indeed, the first question on the Jury Verdict Form asked the jurors to determine whether "the plaintiff [had] proven, by a preponderance of he evidence, that his constitutional right to be free from cruel and unusual punishment under the Eighth Amendment was violated." The jurors were instructed that they only needed to continue deliberating if they answered this question in the affirmative. "If your answer is 'No' to Question 1," they were told, "cease your deliberation and return your verdict." Jury Verdict Form, *White v. Fauver*, No. 97-5127.

5

trials." 20 Moore's Federal Practice and Procedure § 20.03 [4][c]; *see* Appellee's Br. at 14 ("As a practical matter, there is simply no way to try this case against the supervisory defendants without proving the incident involving Mr. White, along with presenting the other proofs concerning reports of complaints and injuries that came to the Administrators' attention, and to which they failed properly to react.").

Appellants argue, next, that bifurcating the claims would have "avoided the introduction of unduly prejudicial evidence in the individual liability phase." Appellants' Br. at 23. To prevail on his supervisory liability claims, White had to prove that the supervisory defendants knew or should have known that officers were using excessive force against inmates, and took no action to address the situation. As proof of awareness, White introduced videotapes, which depicted officers–who were not named as defendants in his case–using what he argued was excessive force against other inmates. Appellants assert that the jury improperly considered these emotionally charged images when determining the threshold issue of whether excessive force was used against White, and that the videotapes, therefore, "expose[d] the individual defendants to an unnecessary risk of an unjust verdict." Appellants' Br. at 25. The District Judge considered this issue, and determined that a limiting instruction would be sufficient to eliminate any potential prejudice or confusion.

We have long held that prejudice does not arise "just because all evidence adduced is not germane to all counts against each defendant . . . ." *United States v. Console*, 13

F.3d 641, 655 (3d Cir. 1993) (citations and internal quotation marks omitted). "Rather, some exacerbating circumstances, such as the jury's inability to compartmentalize the evidence, are required." *United States v. Urban*, 404 F.3d 754, 776 (3d Cir. 2004) (citations and internal quotation marks omitted). Here, the District Judge expressly directed the jury to compartmentalize the evidence, and there is no reason to believe that it was unable or unwilling to do so.[8] He clearly instructed the jury that the videotapes (as well as any other evidence suggesting that inmates other than White may have been subjected to excessive force) related *only* to the question of supervisory liability, and could not be used to determine whether White was personally subjected to excessive force. When such a limiting instruction is given to the jury, "[w]e presume that the jury follows such instructions, and regard such instructions as pervasive evidence that refusals to sever did not" cause undue prejudice. *Id.* Appellants have failed to rebut that presumption.

---

[8] Appellants point to a jury question as evidence of the jury's confusion regarding the applicability of "other act" evidence to the threshold individual liability inquiry. "The . . . jury asked whether they could consider the testimony of a Department of Corrections Ombudsman, Margaret Lebak, [that she reported injuries to other inmates to the prison administrator] to determine whether the plaintiff was subjected to excessive force . . . despite being told throughout the trial that the Ombudsman's testimony went only to supervisory liability." Appellant's Br. at 31; *see also* Da 575. Although appellants believe this is evidence of jury confusion, White considers this same question to be evidence that "[t]he jury indeed perceived the difference in the proofs." Appellee's Br. at 14. We agree with White that if this question demonstrates anything, it is the jury's willingness and ability to compartmentalize evidence and consider it only for its proper purpose.

## III. CONCLUSION

For the foregoing reasons, we conclude that the District Court did not abuse its discretion in denying bifurcation. We will affirm the October 21, 2004 order of the District Court.