**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3481
_____

IN RE:  BAYSIDE PRISON LITIGATION

DAN MCCALLUM,

Appellant

v.

COMMISSIONER OF THE NEW JERSEY DEPARTMENT
OF CORRECTIONS, ET AL.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1-09-cv-03340)
District Judge:  Honorable Robert B. Kugler
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 24, 2011
Before:  RENDELL, CHAGARES and ALDISERT, <u>Circuit</u> <u>Judges</u>

(Opinion filed  March 25, 2011)

_____

OPINION
_____

PER CURIAM

Plaintiff Dan McCallum appeals the August 2, 2010, order of the District Court

entering judgment in favor of the defendants. For the following reasons, we will affirm.

In July 1997, an inmate of the Bayside State Prison in New Jersey fatally stabbed a corrections officer, allegedly leading to widespread retaliation by staff members against the inmate population. Litigation under 42 U.S.C. § 1983 commenced in 1997, see In re Bayside Prison Litig., 157 F. App'x 545, 546 (3d Cir. 2005), and was "still in its initial phases almost four-and-a-half years" later, due to "hundreds of constantly evolving Plaintiffs," see In re Bayside Prison Litig., 190 F. Supp. 2d 755, 756 (D. N.J. 2002).[1]

In October 2007, many of the remaining plaintiffs consented to have their actions reviewed by a Special Master, the Honorable John Bissell, to "assist the resolution of these individual claims and [to formulate] a fair and efficient plan for the management of the individual claims." See Order of Reference to Special Master, ECF No. 2.[2] The Special Master Agreement established that: 1) the participants would waive jury trials as to all matters submitted for resolution; 2) Federal Rules—such as the Federal Rules of Evidence and Civil Procedure—would apply, as would "all applicable law"; 3) findings of fact would be "binding pursuant to Fed. R. Civ. P. 53(g)(3)[3]; and 4) conclusions of law would be reviewed *de novo* upon objection. Special Master Agreement ¶¶ 1, 3–4, ECF

---

[1] Class certification was denied by the District Court in April 2000, as individual issues overwhelmed any commonality among the plaintiffs.

[2] All ECF references in this opinion refer to entries on McCallum's individual docket (1:09-cv-03340).

[3] This subsection is now found at Fed. R. Civ. P. 53(f)(3)(C).

No. 2.

Plaintiff McCallum was one of the parties to this agreement. He had alleged that

on August 13, 1997, after being falsely charged with a weapons offense, he was:

> taken to lockup where he was assaulted. A guard smashed his face into an officer's desk and he was hit and kicked in the back. He requested medical assistance but was denied. [He] did not see medical personnel until he was transferred to another prison. He put in numerous requests for an Internal Affairs investigation and the administrator but never received a response. He filed an A.R.F. but was threatened for doing so. [He] subsequently experienced back pain, and had to have a tooth replaced due to the assaults. Guards directed racial epithets to him.

Sixth Am. Compl. ¶ 226, ECF No. 3. This mistreatment was allegedly "done with the

intention of inflicting pain and suffering upon inmates in retaliation for and/or as revenge

for the killing of a corrections officer." Sixth. Am. Compl. ¶ 4.

The Special Master heard testimony on March 31, 2010, during which McCallum

described the two events underpinning his complaint. First, while McCallum was being

marched to the B Unit after a shank was discovered in his cell, an officer repeatedly

jabbed him in the back with a baton, causing him serious pain. He later developed a back

problem, which required the use of muscle relaxers for several months thereafter. See Tr.

66:5–67:10, 68:22–69:6, 69:10–17.[4] Upon arriving at the B Unit:

> I was being walked to the podium, to the desk, and I was trying to slow down, I was on my tippy toes, another officer grabbed me by my head and rammed my face into the podium desk, knocked my tooth loose. And as I

---

[4] All references to transcript testimony within this opinion are to the testimony collected on March 31, 2010. To our knowledge, these notes of testimony have not received an ECF number.

3

was about to spit out some blood, the officer that was at the desk said don't put no blood on my floor. Don't get no blood on my floor.

Tr. 67:15–22. He complained that he could not identify the officers involved in either assault, as they ordered and compelled him to keep his head down during the process.

Two institutional witnesses then testified in rebuttal. Thomas Guerin, an Internal Affairs investigator, had interviewed McCallum several months after the incident. Guerin testified that while McCallum had insisted that he was not aware of the shank in his cell, at no time did he complain that he had been assaulted in connection with the incident. Tr. 130:10–15, 130:24–131:2. Nor was there an indication in Guerin's written report of either the jabbing or podium incidents. Tr. 135:19–22, 136:13–16. Guerin insisted that if something like that were to have been related, his report would reflect the allegation. Tr. 67:15–22. Linwood Veach, Sr., was working at B Unit during the incident in question and recalled no unusual altercations. Tr. 146:7–148:15.

Having considered the aforementioned testimony in tandem with several exhibits, the Special Master issued his Report on April 21, 2010, finding that McCallum had failed to prove an Eighth Amendment violation and recommending that the court rule in favor of the defendants. The Report questioned McCallum's credibility, observing that he had numerous prior criminal convictions, some of which involved the use of falsity, fraud, and deception. Report 8:2–11. With regard to the jabbing incident, there was no information in the record to dispute that McCallum was jabbed, to some extent, and that he was walked over to B Unit in an uncomfortable position; regardless, "[t]he force

4

employed by . . . officers in transit was not excessive or sadistic under the circumstances, but was . . . reasonably . . . employed under all the circumstances including the fact that [McCallum] was to be charged with harboring and concealing a dangerous homemade shank." Report 8:23–9:26, 13:2–10. With regard to the podium incident, the Special Master weighed the testimony with several exhibits that documented McCallum's complaints and protestations of innocence with regard to the shank in his cell, none of which made reference to any assault or ill treatment. He concluded: "The incident as Mr. McCallum described it at the podium just never happened. And the fact and/or the severity of the incident as he has described it before this Special Master is belied by the complete absence of any reference to it in Mr. McCallum's contemporaneous writings in August of 1997 and in his interviews and other contact with Internal Affairs officers in 1998." Report 13:10–17. The Report recommended an order and judgment of no cause for action; the District Court agreed, and, as there were no objections filed, found in favor of the defendants on August 2, 2010. This appeal followed.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. As the parties specifically agreed to be bound by the Special Master's findings of fact, see Fed. R. Civ. P. 53(f)(3)(C), those findings are "unreviewable by this court or by the district court." AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co., 420 F.3d 751, 753 (8th Cir. 2005). But "[w]hether facts support a cause of action involves application of law to the facts," and we will review issues of law "*de novo* . . . look[ing] directly to the special master's

5

binding factual findings to determine whether they establish the [legal] elements required for . . . relief." Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, 80 F.3d 895, 902–03 (4th Cir. 1996).

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 259 (3d Cir. 2010). The core inquiry on an excessive-force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010) (per curiam) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by" the Eighth Amendment; "[t]he infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Whitley, 475 U.S. at 319. In order to determine whether a correctional officer has used excessive force, we examine: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir.

6

2000) (internal citations, quotations omitted).

With regard to the baton incident, the Special Master concluded that the conduct did not rise to the level of an Eighth Amendment violation. We agree. While acknowledging that nothing in the record contradicted McCallum's claims that he was jabbed, the Special Master found that the force "was not excessive or sadistic under the circumstances," given that the officers had just found a dangerous weapon in McCallum's cell. The additional force may have been unnecessary, but the facts found by the Special Master do not support the conclusion that it was inflicted in a malicious and sadistic manner.[5] With regard to the podium assault, we are bound by the Special Master's conclusion that "[t]he incident as Mr. McCallum described it at the podium just never happened."

Finally, McCallum alleged that he was denied medical treatment following the aforementioned incidents. In order to succeed on an Eighth Amendment claim addressing denied medical treatment, McCallum must show "(1) that the defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S.

---

[5] Both in the complaint and on appeal, McCallum avers that officers made racist remarks while walking him towards B Unit. However, McCallum provided no testimony nor any other evidence supporting his allegation of racist remarks. See Nisenbaum v. Milwaukee County, 333 F.3d 804, 810 (7th Cir. 2003) ("Allegations in a complaint are not evidence."); Orion Tire Corp. v. Goodyear Tire & Rubber Co., 268 F.3d 1133, 1137 (9th Cir. 2001) ("[U]nsubstantiated versions of events proffered . . . on appeal are, of course, not evidence.").

97, 106 (1976)). As with other Eighth Amendment claims, mere negligence or malpractice is not enough; rather, there must be conduct "that includes recklessness or a conscious disregard of a serious risk." Id.; see also Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) ("Where prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury' . . . deliberate indifference is manifest.") (internal citations omitted).

The Special Master did not squarely address this claim in his Report, despite the presentation of testimony on the topic and the existence of physical evidence. Nevertheless, as it is well settled that we can affirm on any basis finding support in the record, see Fairview Twp. v. EPA, 773 F.2d 517, 525 n.15 (3d Cir. 1985), we will do so on the ground that the record fails to show allegations of the deliberate indifference necessary to sustain an Eighth Amendment violation.

For the foregoing reasons, we will affirm the order of the District Court adopting the findings of the Special Master.